IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| Jennings Casey, individually and on behalf of all others similarly situated,<br><br>    Plaintiff<br><br>v.<br><br>Hobbs Rental Corp.,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§   Civil Action No. 2:21-cv-01087-KRS-GJF<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT, REASONABLE ATTORNEY'S FEES, PLAINTIFF'S SERVICE AWARD AND DISMISSAL OF THIS ACTION WITH PREJUDICE**

Plaintiff Casey Jennings[1] ("Jennings" or "Plaintiff") files this Unopposed Motion for Approval of Settlement Agreement, Reasonable Attorney's Fees, Plaintiff's Service Award (the "Motion"), and request for dismissal of this Action,[2] including Plaintiff's claims and the claims of participating settlement class members as defined in Ex. 1, with prejudice.

**I.    INTRODUCTION**

In this case, Plaintiff sought damages for allegedly unpaid overtime wages under the FLSA and New Mexico Minimum Wage Act. (ECF No. 3, ¶¶ 1-3.) Specifically, Plaintiff alleged that Plaintiff and the putative settlement class members were manual laborers[3] (*e.g.*, Plaintiff was a hard bander, a type of oilfield welder) who worked on oilfield locations in the states of New

---

[1] Plaintiff's Original Complaint misnamed him as Jennings Casey. In the interest of expediency, Plaintiff does not file a motion to amend the caption, but acknowledges that his legal name is Casey Jennings.

[2] Defined as the lawsuit styled *Jennings Casey [sic] v. Hobbs Rental Corp.,* Case No. 2:21 cv-01087-KRS-GJF, United States District Court for the District of New Mexico.

[3] 29 C.F.R. § 541.3(a) ("The section 13(a)(1) exemptions and the regulations in this part do not apply to manual laborers or other "blue collar" workers who perform work involving repetitive operations with their hands, physical skill and energy.").

Mexico and Texas. (*Id.*, ¶ 35.) Plaintiff alleged that Defendant paid Plaintiff and its manual laborers on a salary basis despite the fact that they were non-exempt employees entitled to overtime premium compensation for hours worked over forty in each seven-day workweek ("salary misclassification"). (*Id.*, ¶ 36.)

Defendant agreed to participate in mediation prior to filing a responsive pleading in this action, and consequently, because an agreement at mediation was reached, did not file an Answer to Plaintiff's Complaint or lodge any affirmative defenses to Plaintiff's allegations. However, it was expected that Defendant would have challenged Plaintiff's allegations that he and the putative collective action members were non-exempt employees. Defendant did challenge Plaintiff's allegations with respect to the statute of limitations, propriety of class certification for Plaintiff's state law claims, non-exempt status, proper calculation of damages, whether on a time and one-half model or on a fluctuating workweek model.

By entering into the proposed settlement agreement, Defendant does not admit liability. The Parties agree that the Court properly exerts subject matter jurisdiction and personal jurisdiction over the Defendant.

Having engaged in informal discovery and in extensive preparation for and a settlement conference before the Honorable Judge Fouratt, the Parties have reached the settlement agreement attached hereto as Exhibit 1, which they now request that the Court approve.

## II.     PROCEDURAL HISTORY

Plaintiff filed this lawsuit on behalf of himself and a putative collective of manual laborer employees on November 10, 2021. (ECF No. 1.) Plaintiff amended his complaint to name the current Defendant, Hobbs Rental Corp. on November 16, 2021. (ECF No. 3.)

The Parties began discussing resolution early in the action, resulting in the Court granting a stay. (*See* ECF No. 6.) The stay was continued to accommodate a settlement conference before Judge Fouratt, which took place on June 3, 2022. (*See* ECF Nos. 8, 9.) To avoid protracted litigation and expense, the Parties agreed to engage in informal discovery regarding the merits of the case and the scope of the proposed class(es). Among other things, Defendant produced the records necessary for the Parties to accurately calculate the scope of exposure in the case. Plaintiff provided Defendant with a comprehensive analysis of the employment records provided by Defendant. The Parties engaged with Judge Fouratt's procedures in presenting detailed written demands and responses prior to the settlement conference and engaged in individual discussions with Judge Fouratt which helped the Parties to best understand the strengths and weaknesses of their respective cases.

On June 3, 2022, the Parties attended the settlement conference with Judge Fouratt, and after substantial arm's-length negotiations, the Parties reached a resolution to settle this case on a collective/opt-in basis. The Parties have identified a settlement class of fourteen individuals, including Plaintiff, who arguably had manual labor job duties and did not receive pay at the rate of time and one-half their respective hourly rates of pay. These participating settlement class members will receive significant compensation through this settlement. Indeed, the average recovery after attorney's fees and costs have been deducted is approximately $15,652.00, and an individual with a long tenure with the company will receive, if the employee elects to participate up to $69,657.05.

### III.     AGREED MOTION FOR FLSA CERTIFICATION FOR SETTLEMENT PURPOSES

The Court has not yet conditionally certified a collective action in this case. The Parties stipulate and agree for purposes of the settlement only that notice of the settlement to all individuals

described by the class definition in Plaintiff's First Amended Complaint is proper under the relevant standard, and that the collective action members are similarly situated in all relevant respects under the FLSA. (*See* Ex. 1, ¶ 8.) In the event the Court does not approve of the settlement in this case, the Parties will return to their respective postures and may or may not agree to issuance of notice to the putative settlement class members. (*See id.*)

### IV.    SUMMARY OF SETTLEMENT

The Parties have reached a settlement agreement which provides monetary relief to the participating settlement class. (Ex. 1.) The exact settlement distributions, that is, the net distribution available to the participating settlement class members is reflected in Exhibit B to the settlement agreement. (*Id.*) The Settlement provides gross relief in the amount of $375,000. (*Id.*) This gross settlement amount is well-within the range of acceptable compromise in FLSA cases, and Plaintiff and the participating settlement class members will each receive slightly over their full calculated back pay after deducting attorney's fees and costs, which is a fair and reasonable result.

The settlement is structured as a claims-made, reversionary settlement, meaning that each settlement class member will receive notice of the settlement and the specific amount available to them and have the option to claim the funds made available under the settlement in exchange for a release of his wage and hour claims, or to reject the offer and proceed without releasing his claims. The proposed notice is attached as Exhibit A to the settlement agreement, and has been approved for use in other cases. (*Id.*) Plaintiff respectfully requests that this Court dismiss this Action (defined as the lawsuit styled *Jennings Casey [sic] v. Hobbs Rental Corp.*, Case No. 2:21-

cv-01087-KRS-GJF, United States District Court for the District of New Mexico), including Plaintiff's claims and the claims of the participating settlement class members.

The participating settlement class members will receive a personalized version of the notice documents attached as Exhibit A to the settlement agreement. These documents clearly explain the nature, terms, and scope of the settlement, the release and the amount of compensation they may recover from the settlement. The participating settlement class members will have forty-five (45) days to consent to the settlement, which is an appropriate amount of time giving the small number of settlement class members.

The participating settlement class members will be paid a settlement award from the net settlement amount. The allocated amounts are based on the class data transmitted to Plaintiff's counsel. The settlement award is based on each settlement class member's estimated overtime hours worked based on their specific rates of pay and weeks of work. If any settlement class member does not timely return a release of claims, they will not be bound by the settlement agreement, and will be free to proceed with their own action against Defendant, but the settlement allocation of that individual will remain in Defendant's possession. In other words, the failure of a settlement class member to join the case will not increase the *pro rata* share to participating settlement class members or otherwise inure to the benefit of the participating settlement class members. Rather, Defendant will retain any unclaimed sums. This is a material term of the settlement agreement.

Fifty percent of the settlement award to each participating settlement class member shall be treated as back wages, and accordingly, on each settlement award, Defendant shall effectuate federal and applicable state income and employment taxes, levies, child support orders, and similar withholdings as required by law with respect to 50% of each settlement award distributed, and

Defendant shall pay Defendant's customary employer share of all required federal and state payroll taxes on such amounts. The remaining 50% of each settlement award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to federal or state withholdings. Each participating settlement class member shall be solely and legally responsible to pay all taxes on the non-wage penalties and liquidated damages portion of the settlement award.

## V.     AUTHORITY IN SUPPORT OF SETTLEMENT

### A.     Relevant Standard.

The FLSA provides that in certain circumstances courts must approve FLSA collective action settlements. 29 U.S.C. § 216(c). Under Section 216(b) of the FLSA, an employee may settle and release claims against an employer if the parties present the district court with a proposed settlement and the district court enters a stipulated judgment approving the fairness of the settlement. *Id. See also Sculte, Inc. v. Gandi*, 328 U.S. 108 (1946); *Jarrad v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947). This requirement of judicial approval was recognized in pertinent part in the seminal Eleventh Circuit case, *Lynn's Food Stores, Inc v. United States*, 679 F.2d 1350 (11th Cir. 1982).

However, as recognized by Judge Kea Riggs in a recent opinion, district courts in the Tenth Circuit are split on the application of *Lynn's Foods* and the issue of whether FLSA collective action lawsuits require judicial oversight. *See Price v. Devon Energy Corp.*, No. 2:20-cv-00316-KWR-GJF, 2021 WL 2312537, at *1 (D.N.M. May 24, 2021) (collecting cases). Notwithstanding its recognition of the split, but without reviewing the merits of the settlement, the Court approved the settlement in the alternative based on the record and found the agreement to be fair, reasonable and equitable to all parties concerned. On that basis, and pursuant to the settlement agreement,

Plaintiff respectfully requests the Court approve the settlement and enter the attached order effectuating the same.

When, as here, the Court conducts a judicial review and approval of a settlement agreement, the Court must be satisfied that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Alaniz v. Maxum Petroleum Operating Co., Inc.*, No. SA-15-CV-00373-XR, 2016 WL 6462206, at *1 (W.D. Tex. Oct. 31, 2016) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

### 1. The Settlement Resolves a *Bona Fide* Dispute.

Most critically, this settlement compromises a bona fide dispute regarding the application of the FLSA. Specifically at issue in this lawsuit was whether the collective action members were exempt employees of Defendant, and the question of the proper calculation of Plaintiff's damages, *i.e.*, whether to compensate Plaintiff and the putative collective action members using the time and one-half or fluctuating workweek model. *See Clements v. Serco, Inc.*, 530 F.3d 1224, 1230 (10th Cir. 2008) (citing 29 C.F.R. § 778.114(a)). In such instances, courts will approve compromises of backpay damages under the FLSA. *See, e.g., Apollo Strong v. Marathon Res. Mgmt. Group, LLC*, 1:18-CV-634-RP, 2020 WL 12597672, at *2 (W.D. Tex. Feb. 26, 2020); *Alaniz*, 2016 WL 6462206, at *2 (approving a settlement agreement where exempt status and regular rate were at issue); *Ibarra v. Del's Grass Farm Ltd.*, No. SA-21-CV-00252-ESC, 2022 WL 1157657, at *2 (W.D. Tex. Apr. 18, 2022) (approving a negotiated settlement involving drivers allegedly covered by the FLSA's agricultural exemption).

However, in this instance, there has not been a compromise of the potential backpay as calculated by Defendant. Indeed, the pre-tax distributions to Plaintiff and the participating settlement class action members represent full backpay and a portion of the liquidated damages

that might have been owed to them if Defendant had not demonstrated good cause for its alleged violation of the FLSA. This is a fair and reasonable result that fairly compensates Plaintiff and the participating settlement class members for their overtime wages.

### 2.     The Settlement Is Fair and Reasonable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). In determining whether a settlement is fair to the parties in a FLSA collective action, a court looks at whether the settlement reflects the legal and factual disputes "at play when the settlement was reached while compensating FLSA collective action members with a significant portion of the amount Plaintiffs sought at trial." *Rodarte v. Bd. of Cty Comm'rs of Bernalillo Cty*, No. 14-CV-193 JAP/SCY, 2015 WL 5090531, at *9 (D.N.M. Aug. 28, 2015).

Courts assessing an FLSA settlement for fairness and reasonableness examine factors that apply to proposed class action settlements under Rule 23(e), including: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or

computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Id.*

      a. *The Agreement Was Fairly and Honestly Negotiated.*

The settlement agreement presented by Plaintiff for approval was fairly and honestly negotiated before the Court by attorneys with sufficient experience to properly value the FLSA claims at issue. Defendant produced class data which was reviewed by Plaintiff's counsel and the Court with respect to the rates of pay and weeks of work of the settlement class members, and was adequate to assess the potential exposure in the case. The Parties compromised the unrecorded hours worked by the settlement class members as well as the method of calculation of the back pay allegedly owed to them at arm's length in an adversarial and non-collusive settlement conference before the Court. The foregoing factors regarding the negotiation of the settlement indicate that the first factor of the relevant analysis is established.

      b. *Serious Questions of Law and Fact Call the Ultimate Outcome of the Litigation into Question.*

Serious questions of law and fact exist as to whether Defendant is liable to Plaintiff and the settlement class members, and if so, in what amounts. The Parties dispute the proper calculation of Plaintiff's damages, *i.e.*, whether to compensate Plaintiff and the putative collective action members using the time and one-half or fluctuating workweek model. *See Clements v. Serco, Inc.*, 530 F.3d 1224, 1230 (10th Cir. 2008) (citing 29 C.F.R. § 778.114(a)). In such instances, courts will approve compromises of backpay damages under the FLSA. *See, e.g., Apollo Strong v. Marathon Res. Mgmt. Group, LLC*, 1:18-CV-634-RP, 2020 WL 12597672, at *2 (W.D. Tex. Feb. 26, 2020); *Alaniz*, 2016 WL 6462206, at *2 (approving a settlement agreement where exempt status and regular rate were at issue); *Ibarra v. Del's Grass Farm Ltd.*, No. SA-21-CV-00252-

ESC, 2022 WL 1157657, at *2 (W.D. Tex. Apr. 18, 2022) (approving a negotiated settlement involving drivers allegedly covered by the FLSA's agricultural exemption).

        c. *The Value of Immediate Recovery Outweighs the Possibility of Future Relief After Protracted Litigation.*

The immediate recovery offered by the proposed settlement outweighs the potential value of the case if the Parties continued litigating the matter. As mentioned, there are legal and factual uncertainties surrounding liability and damages. If the Parties proceeded to litigate the matter instead of settling, the next steps would require the Parties to engage in lengthy and costly discovery, disputes and motion practice regarding certification and decertification, which would likely be followed by cross-motions for summary judgment and potential trial on liability and damages. Instead of undertaking this protracted litigation course which may result in no recovery, the proposed settlement guarantees Plaintiff and participating settlement class members will receive a fair and reasonable recovery. Indeed, the average recovery after attorney's fees and costs have been deducted is approximately $15,652.00, and individuals with a long tenure with the company will receive, if the employee elects to participate up to $69,657.05.

        d. *The Parties Agree that the Settlement Is Fair and Reasonable.*

The Parties agree as to the apportionment and distribution of the settlement funds. (*See* Ex. B to Ex. 1.) The Parties also agree that the FLSA settlement is in the best interest of all Parties and is fair and reasonable. (*See* Ex. 1, ¶ 6.) To the extent any of the settlement class members disagree, and as noted in the Notice form they will be provided (*see* Ex. A to Ex. 1, p. 2) they need not participate in the settlement, and will be free to bring their own claim against Defendant with a lawyer of their own choosing or *pro se*.

In sum, the settlement is in the best interest of the Parties as it reduces the time that the settlement class members would have to wait to receive payment were the case to proceed to trial,

reduces risk to both Parties of an unfavorable judgment, and favors judicial economy. Furthermore, the settlement is fair and reasonable as the amount and terms of the settlement were the result of arm's-length negotiations mediated by Judge Fouratt.

**B.    The Attorney's Fees Agreed to by the Parties Are Reasonable and Do Not Compromise the Backpay Award to the Class.**

    **1.    Courts Commonly Pay Class Counsel a Percentage of the Common Fund in FLSA Cases.**

The FLSA provides that the Court "shall . . . allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Robles v. Brake Masters Sys.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *19, (D.N.M. Jan. 31, 2011) (The Court has recognized in other cases that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828 *1 (W.D. Okla. Oct. 23, 2018). Although the fee is mandatory, the Court has discretion to determine the reasonableness of the amount requested. *See Olivo v. Crawford Chevrolet Inc.*, 526 Fed. App'x 852, 855 (10th Cir. 2013).

With respect to the percentage recovery to Plaintiff's counsel, attorney's fees are commonly awarded in both federal and state courts in recognition of the principle that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (observing that the United States Supreme Court "has recognized consistently that a litigant or a

lawyer who recovers a common fund […] is entitled to a reasonable attorney's fee from the fund as a whole"). The common fund doctrine ensures payment for work performed by class counsel, avoiding the alternative of unjust enrichment of absent class members who benefit from the fund without an express retainer agreement. *Id*. An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Plaintiff seeks attorney's fees at the rate of 40% of the gross settlement amount. (Ex. 1, ¶ 10(i).) This rate is typically approved by district courts with respect to settled FLSA collective action cases in the Tenth Circuit. *See Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Philips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998). *See also*, *e.g.*, *Price v. Devon Energy Corp.*, No. 2:20-cv-00316-KWR-GJF, 2021 WL 2312537, at *1 (D.N.M. May 24, 2021) (approving attorney's fees at the rate of 40%);*Jackson v. U.S. Bancorp*, No. 20-2310-EFM, 2022 WL 744693, at *4 (D. Kan. Mar. 11, 2022) (approving an award of 40% of a gross settlement amount); *Sanders v. MPRI, Inc.*, No. 5:08–cv–00345–R (W.D. Okla. July 9, 2009) (approving fees in an FLSA collective action of 38.5% of the total settlement plus litigation costs); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins.*, No. CIV 89–822–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."). *Accord, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (affirming district court's finding that contingency fees for class funds have ranged from thirty-

five to forty percent, and that thirty percent contingent fee "is on the low side" for labor litigation); *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-01056-RP, 2021 WL 2934896, at *3 (W.D. Tex. Jan. 25, 2021) (Pitman, J.) ("The settlement agreement requires that [the defendant] pay 40 percent of the total settlement amount to FLSA Plaintiffs' counsel to cover attorney's fees and costs, in addition to 'advanced litigation expenses.' […] This percentage is in line with [w]hat courts have approved in reviewing other FLSA settlements."); *Sarabia v. Spitzer Indus., Inc.*, No. 4:17-CV-02092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (Ellison, J.) ("The parties agreed on attorneys' fees that represent 40% of Defendant's total payment. This percentage is in line with that approved in other FLSA cases.").

### 2. The *Johnson* Factors Support the Parties' Agreed Upon Attorney's Fees.

In assessing the reasonableness of attorney fee awards in class actions, some courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) that include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See *Whittington v. Taco Bell of Am.*, Inc., No. 10-CV 01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.*

Considering the circumstances presented herein, the attorney's fee provided in the settlement agreement is imminently reasonable under the *Johnson* factors.

      *a. FLSA Collective Action Cases Are Inherently Complex and Plaintiff's Counsel Is an Experienced FLSA Practitioner.*

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. Effective prosecution of these claims requires not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

Plaintiff's counsel's skill, knowledge, reputation, and experience are well-recognized in FLSA cases such as this. *See, e.g.*, *Ibarra v. Del's Grass Farm Ltd.*, No. SA-21-CV-00252-ESC, 2022 WL 1157657, at *2 (W.D. Tex. Apr. 19, 2022) (noting counsel's experience as a labor and employment attorney); *Meadows v. Latshaw Drilling Company, LLC*, No. 3:15-CV-1173-N, 2020 WL 291582, at *3 (N.D. Tex. Jan. 21, 2020) (awarding attorney's fees after trial victory); *Cruz v. Maverick Cty*, No. DR-14-CV-050-AM, 2018 WL 4694366, at *3 (W.D. Tex. Sept. 20, 2018) (awarding fees after a complete trial victory). FLSA collective action cases such as this are the main focus of Plaintiff's counsel's docket.

Plaintiff's counsel's experience has caused her to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this and maximizes the settlement value of the case. Plaintiff's counsel's experience in this field has also resulted in a familiarity with the evidence and testimony necessary to the successful prosecution of cases such as this.

Although FLSA cases are not novel, FLSA work is a specialized area of law where extra skill is needed to litigate, especially in a case such as this that began as a single plaintiff with a complaint. *Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("wage and hour collective and class actions are, by their very nature, complicated and time-consuming"). Resolving the procedural issues, the merits, and calculating

damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at *6. As courts in this Circuit have noted, attorneys handling such large classes are precluded by the ticking of the clock from taking other cases given that counsel took a chance on a possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Plaintiff's counsel.

      b. *Plaintiff's Counsel's Requested Fees and Costs Are Reasonable.*

To date, Plaintiff's counsel has incurred $872.00 in unreimbursed expenses. This is a very reasonable amount of costs for a case, including filing and service fees which are taxable costs. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Plaintiff's counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, postage and other delivery fees, Pacer charges, and legal research. *Id.* These are the types of costs normally billed to clients. *See Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018); *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). These expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement, Defendant does not object to the request for costs.

Finally, the requested attorney fee award of $150,000 (40% of the Gross Settlement Amount), is well within the acceptable range of contingency fees similar cases in this Circuit. *See Robles v. Brake Masters Sys.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *19 (D.N.M. Jan. 31, 2011) ("Fees in the range of 30-**40%** of any amount recovered are common in complex and

other cases taken on a contingent fee basis.") (emphasis added); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins.*, Nos. CIV 89–822–T and CIV 89– 1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (same).

      c.  *Plaintiff's Counsel Represented Plaintiff on a Contingency Basis.*

The separately negotiated and agreed upon contingency fee arrangement between Plaintiff and Plaintiff's counsel provides for a contingency fee of 40% of the gross settlement amount. Plaintiff's counsel bore the entire risk of loss of this case since there was the possibility that no recovery would be made.

Courts find contingency fee agreements like the one entered into by the Plaintiff in this case, which carry the risk of nonpayment, to militate in favor of the reasonableness of a requested fee award. *See, e.g., Aragon*, 2018 WL 6620724 at *6; *Shaw v Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *4 (D. Colo. Apr. 22, 2015). The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of an FLSA case] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA "attorneys' fees included in a settlement agreement requires . . . deference by the district court to the parties' agreement." *Id.*

      d.  *Plaintiff's Counsel's Requested Fee Is Within the Customary Range*

Class Counsel's request for attorneys' fees in the amount of 40% of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit. *Price v. Devon Energy Corp.*, No. 2:20-cv-00316-KWR-GJF, 2021 WL 2312537, at *1 (D.N.M. May 24, 2021) (approving attorney's fees at the rate of 40%);*Jackson v. U.S. Bancorp*, No. 20-2310-EFM, 2022

WL 744693, at *4 (D. Kan. Mar. 11, 2022) (approving an award of 40% of a gross settlement amount); *Sanders v. MPRI, Inc.*, No. 5:08–cv–00345–R (W.D. Okla. July 9, 2009) (approving fees in an FLSA collective action of 38.5% of the total settlement plus litigation costs); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins.*, No. CIV 89–822–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."). *Accord, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (affirming district court's finding that contingency fees for class funds have ranged from thirty-five to forty percent, and that thirty percent contingent fee "is on the low side" for labor litigation); *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-01056-RP, 2021 WL 2934896, at *3 (W.D. Tex. Jan. 25, 2021) (Pitman, J.) ("The settlement agreement requires that [the defendant] pay 40 percent of the total settlement amount to FLSA Plaintiffs' counsel to cover attorney's fees and costs, in addition to 'advanced litigation expenses.' […] This percentage is in line with [w]hat courts have approved in reviewing other FLSA settlements."); *Sarabia v. Spitzer Indus., Inc.*, No. 4:17-CV-02092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (Ellison, J.) ("The parties agreed on attorneys' fees that represent 40% of Defendant's total payment. This percentage is in line with that approved in other FLSA cases.").

    e. *Plaintiff Obtained a Fair and Reasonable Settlement with Respect to the Settlement Class Members.*

Finally, "the most critical factor in determining a fee award is the degree of success obtained." *Singer v. City of Waco*, Tex., 324 F.3d 813, 829 (5th Cir. 2003). The fairness and reasonableness is further demonstrated because the parties agreed to enter into an early mediation early relief for which none of the settlement class members were required to engage in written or oral discovery, let alone trial. This is of great benefit to the settlement class members. Moreover, the participating settlement class members will receive full backpay and a portion of the liquidated

damages which might have been owed to them had Defendant not demonstrate good cause for its alleged violation of the FLSA. This is a fair and reasonable result.

For these reasons, Plaintiff believes a fee of 40% is reasonable and necessary in this case. Class Counsel also seeks reimbursement of their advanced litigation expenses. For these and remaining costs, Class Counsel requests reimbursement of fees in the amount of $872.00.

## VII.    THE COURT SHOULD APPROVE PLAINTIFF'S SERVICE AWARD

Plaintiff's requested service award is reasonable. Named plaintiffs are eligible for reasonable incentive payments as part of a putative class or putative collective action settlement. *See Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Acevedo v. Southwest Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *4 (D.N.M. Dec. 10, 2019) (approving incentive award in FLSA collective action); *Pilego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 enhancement award to named plaintiff in FLSA class and collective action reasonable and "commensurate with awards in similar cases."). The reasonableness of a service award to a named plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement. *Thompson v. Qwest Corp.*, No. 17-CV-1745-WJM-KMT, 2018 WL 2183999, at *3 (D. Colo. May 11, 2018) (finding a $5,000 incentive award to an FLSA named plaintiff to be "on the lower end of awards deemed reasonable" in similar cases).

Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the putative class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of retaliation. *Pilego*, 313 F.R.D. at 131.

Importantly, courts in this Circuit have found significantly higher incentive awards reasonable in other FLSA/employment cases. *See, e.g., Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Ok. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards of $20,000); *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *1 (D. Colo. Apr. 22, 2015) (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken Family Ltd. Partnership, LLP v. Ultra Resources*, Inc., No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010) (approving $10,000 service award to named plaintiff).

The proposed $5,000.00 service award to Plaintiff is reasonable and Defendant does not oppose this amount. The service award is intended to recognize initiative and efforts on behalf of the settlement class members and the time and effort he contributed to this Lawsuit and the settlement over the last year. Indeed, Plaintiff expended significant effort and time in educating Plaintiff's counsel regarding the settlement class members' job experiences and Defendant's policies and procedures, as well participating in settlement discussions and the settlement approval process to help ensure the recover unpaid wages.

Because Plaintiff represented the interests of the settlement class members and worked diligently to ensure the settlement class members could recover the wages they are allegedly due, the proposed $5,000.00 service award is reasonable.

### VII. <u>CONCLUSION</u>

In sum, the Parties agree as to the apportionment and distribution of the settlement funds. (*See* Ex. B to Ex. 1). The Parties also agree that the FLSA settlement is in the best interest of all Parties and is fair and reasonable. (*See* Ex. 1, ¶ 6). The settlement is in the best interest of the Parties as it reduces the time that the settlement class members would have to wait to receive

payment were the case to proceed to trial, reduces risk to both Parties of an unfavorable judgment, and favors judicial economy. Furthermore, the settlement is fair and reasonable as the amount and terms of the settlement were the result of arm's-length negotiations mediated by Judge Fouratt.

For these and all of the foregoing reasons, Plaintiff respectfully requests that the Court enter the attached order approving the settlement and ordering notice of the settlement to issue to the settlement class members and incorporation of a provision dismissing this Action, including Plaintiff's claims and the claims of participating settlement class members with prejudice. Plaintiff respectfully requests such other and further relief to which he has shown himself justly entitled.

Dated:  July 11, 2022                    Respectfully submitted,

                                  By:    s/Melinda Arbuckle
                                            Melinda Arbuckle
                                            marbuckle@eeoc.net
                                            Ricardo J. Prieto
                                            rprieto@eeoc.net
                                            Shellist Lazarz Slobin LLP
                                            11 Greenway Plaza, Suite 1515
                                            Houston, TX 77046
                                            (713) 621-2277 – Telephone
                                            (713) 621-0993 – Facsimile

                                            ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

On July 11, 2022, I filed the foregoing document with the clerk of court using the Court's CM/ECF system. I hereby certify that I have served all counsel of record electronically or by another manner authorized by the Federal Rules of Civil Procedure.

                                            s/Melinda Arbuckle
                                            Melinda Arbuckle